

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES HAIR,
          Plaintiff,

    v.                                 Civil Action No. 3:25cv269

LT. TAYLOR, *et al.*,
          Defendants.

## OPINION

James Hair suffers from multiple sclerosis ("MS") and asthma. He requires daily immunosuppressant medication, special glasses to manage his visual MS symptoms, and an inhaler. From February 2021 through April 2022, however, employees at Northern Neck Regional Jail ("NNRJ") denied Hair these prescribed treatments. Worse still, NNRJ withheld food from the plaintiff, confiscated his glasses, and assigned him to a solitary confinement unit after he reported a sexual assault. These abuses culminated in three defendants brutally beating Hair on April 8, 2022.[1] Hair received practically no medical treatment for his extensive injuries.

---

[1] The plaintiff has identified, or partially identified, seven defendants: Sergeant Mark A. Hodges, Captain Eleazar "Bernie" Luna, then-NNRJ Superintendent Edward "Ted" Hull, Doctor James R. Dudley, Lieutenant Taylor (no first name), Officer Lumen (no first name), and Hearing Officer Hodges (no first name and distinct from Sergeant Hodges). Of these defendants, the plaintiff has successfully served Sergeant Hodges, Luna, and Hull. (*See* ECF Nos. 26-1, 26-2, 26-3.)

Hair sought complete identification and contact information from NNRJ for Dudley, Taylor, Lumen, and Officer Hodges pursuant to the Virginia Freedom of Information Act ("VFOIA"). He also requested the names of the wholly unidentified defendants, Jane Doe and John Does 1–5. Given Hair's diligence, the Court granted the plaintiff numerous extensions to identify and serve the unknown parties. (*See* ECF Nos. 18–21, 26, 27.) NNRJ, however, ignored the VFOIA request, and the Court ordered the jail to disclose to Hair's counsel the names and addresses of the NNRJ employees present during the April 8, 2022, incident. (*See* ECF Nos. 26-5, 27.) As of February 5, 2026, the plaintiff's counsel had not received these disclosures.

The Court has little doubt NNRJ staff treated Hair cruelly during his detention. But because Hair filed this 42 U.S.C. § 1983 suit three years after the events in April of 2022, the Court cannot provide the plaintiff with any remedy. The Court, therefore, will grant Luna and Hull's motion to dismiss pursuant to Virginia's two-year statute of limitations applicable to § 1983 actions.

## I. FACTS ALLEGED IN THE COMPLAINT

In 2018, Bon Secours Hospital diagnosed the plaintiff with MS. (ECF No. 1 ¶ 21.) Hair's MS "causes extreme light sensitivity and headaches" for which he "was prescribed strong eyeglasses with tinted transition lenses." (*Id.*) These glasses "are a medical device used to treat his visual [MS] symptoms." (*Id.*) But MS is a complex disease. The plaintiff "also experiences weakness, numbness, intermittent pain in his extremities, and other symptoms," including "nosebleeds[,] blood in his stool[,] hemoptysis[,] lower back pain[,] muscle spasms, cramping, [] electric pain in his right extremities," and a dragging right leg. (*Id.* ¶ 22 (alterations added).) Historically, Hair took "daily immunosuppressant medication" to manage his symptoms.[2]

From roughly February 2021 until "the end of April 2022," the United States Marshals Service held Hair at NNRJ in Warsaw, Virginia, as he awaited trial on federal charges. (*Id.* ¶¶ 17–19.) Though Hair "filed numerous requests for medical treatment," he did not receive adequate care[3] while at NNRJ. (*Id.* ¶¶ 25–27.) In addition to the jail's failing to treat Hair's symptoms, one NNRJ employee, "Sgt. Luna," sexually assaulted the plaintiff. (*Id.* ¶ 28.) The plaintiff believes Sergeant Luna "is the brother of [the] [d]efendant, Capt[ain] Luna." (*Id.* (alterations added).) Hair

---

[2] (*Id.* ¶ 25.) Hair also suffers from asthma and uses an inhaler to treat shortness of breath, coughing, and chest tightness, and to prevent attacks. (*Id.* ¶ 23.) Further, in January of 2020, "Hair was diagnosed with cancerous cells on his kidney" that were never treated. (*Id.* ¶ 24.)

[3] For example, Hair did not receive his daily immunosuppressant medication. Instead, he "was only offered Tylenol for pain." (*Id.* ¶ 25.)

2

called the Prison Rape Elimination Act ("PREA") hotline and made an official report about this assault, but NNRJ took no action. (*Id.*)

Sometime after the sexual assault, in January of 2022, another defendant, "Officer Lumen," confiscated Hair's prescription glasses. (*Id.* ¶¶ 30–37.) The plaintiff "suffered several falls getting out of bed and going up the stairs because he was unable to see," and he endured "extremely painful headaches on a daily basis." (*Id.* ¶¶ 35–36.) But NNRJ staff ignored Hair's "numerous . . . requests for the return of his glasses," and the plaintiff concluded that Lumen "took his glasses as retaliation to [*sic*] the PREA report he filed against [Sergeant] Luna."[4] The retaliation did not end there. Hair "was moved to the punitive segregation unit, called 'N-POD,'" during February or March of 2022. (*Id.* ¶ 45.) While in this solitary confinement unit, Hair "was not served meals at regular intervals"—and the limited meals he did receive were often inedible and "covered in mace." (*Id.* ¶ 48.) By March 9, 2022, Hair had lost 31 pounds. (*Id.* ¶ 49.)

On April 8, 2022, seven defendants "maced the door to . . . Hair's . . . cell before bursting into the room" and viciously beating him. (*Id.* ¶ 51.) Taylor, Sergeant Hodges, and John Doe 1 "repeatedly punched . . . Hair in the face," knocked out a front tooth, and broke his nose. (*Id.* ¶ 52.) Sergeant Hodges "wrenched . . . Hair's arm behind his back" and "broke his collarbone." (*Id.* ¶ 53.) The beating continued until John Doe 2 "told [the defendants] to stop" because Hair "[was] not moving." (*Id.* ¶ 54 (alterations added).) Hair received an initial medical evaluation from someone named "Ms. Taylor," and "approximately one hour later," he "was taken to Medical" and "seen by [the defendant], D[octor] Dudley." (*Id.* ¶¶ 57–60 (alterations added).) Though Dudley

---

[4] (*Id.* ¶¶ 38, 40 (alteration added).) Though NNRJ employees brought Hair "to an outside optometrist to obtain new prescription glasses" in March of 2022, the officers "declined to pay . . . for the recommended tinted transition lenses"—so Hair received "a $7 pair of plastic framed prescription glasses without the transition tint required to manage" his MS symptoms. (*Id.* ¶ 44.)

3

"recommended an MRI and CT scan," he "did not send . . . Hair to the hospital to receive emergency medical treatment." (*Id.* ¶ 60.) When Hair returned to his isolation cell in N-POD, "all his personal belongings . . . had been taken from his cell." (*Id.* ¶ 61.) Hair filed an internal report on April 10, 2022, which the defendant, Luna, read and acknowledged. (*Id.* ¶¶ 62–64.) Another NNRJ doctor examined Hair on April 12, 2022, and again advised that the jail seek outside medical attention for the plaintiff's facial swelling and broken nose. (*Id.* ¶ 68.) That same day, Hair received treatment at Virginia Commonwealth University ("VCU") Medical Center. (*Id.* ¶ 69.) VCU doctors recommended nasal surgery and administered an MRI, which showed "Hair also sustained a traumatic brain injury . . . to the left frontal lobe of his brain." (*Id.* ¶¶ 70–71.) NNRJ took no action on these findings. The plaintiff continued to file internal reports about his injuries, and eventually, his family members "contacted the [Marshals Service] . . . about the cruel treatment he was receiving at NNRJ." (*Id.* ¶ 74 (alterations added).) By the end of April 2022, Hair "was transferred to CDF[,] Chesapeake Detention Facility." (*Id.* (alteration added).)

Most of Hair's personal belongings "were never seen again." (*Id.* ¶ 75.) Hair never had surgery to fix his nose. He never saw an oral surgeon and is still missing his left front tooth. In addition to his preexisting MS and asthma symptoms, he now "suffers from decreased self-esteem, nightmares, and post-traumatic stress disorder." (*Id.* ¶ 76.)

Hair filed his complaint on April 8, 2025. He brings nine claims against thirteen defendants: excessive force, in violation of the Fourth and Fourteenth Amendments and pursuant to 42 U.S.C. § 1983 (Count One); deliberate indifference to a pretrial detainee's serious medical needs, in violation of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983 (Count Two); excessive force, in violation of Article I of the Virginia Bill of Rights (Count Three); deliberate indifference to a pretrial detainee's serious medical needs, also in violation of Article 1 of the

4

Virginia Bill of Rights (Count Four); common-law assault (Count Five); common-law battery (Count Six); common-law negligence (Count Seven); bystanders' liability on the federal constitutional claims, pursuant to 42 U.S.C. § 1983 (Count Eight); and bystanders' liability, in violation of Virginia Code § 19.2-83.6 (Count Nine).[5]

## II. LEGAL STANDARD

Two defendants, Luna and Hull, move to dismiss Hair's complaint for failure to state a claim. (ECF No. 29); *see* Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "test[s] the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (alteration added). The Court must "assume all well-pled facts to be true" and "construe[] these facts in the light most favorable to the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted) (alteration added). Indeed, when a Rule 12(b)(6) motion "test[s] the sufficiency of a civil rights complaint," a court "must be especially solicitous of the wrongs alleged"—it may "not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory." *Edwards*, 178 F.3d at 244 (citing *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (cleaned up).

Despite this "especially solicitous" review, however, a court "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences,

---

[5] Although the complaint does not explicitly refer to § 1983 in Count Eight, the Court construes this as a bystander liability claim brought pursuant to 42 U.S.C. § 1983. (ECF No. 1 ¶¶ 124–32.)

Hair brings Count One against Taylor, Sergeant Hodges, and John Doe 1. Count Two names Lumen, Luna, Hull, Officer Hodges, Dudley, and Jane Doe. The plaintiff names Taylor, Sergeant Hodges, and John Doe 1 in Count Three, and names Lumen, Luna, Hull, Officer Hodges, Dudley, and Jane Doe again in Count Four. Hair brings Counts Five and Six against Taylor, Sergeant Hodges, and John Doe 1, and he brings Count Seven against Dudley and Jane Doe. Finally, he brings both bystander liability claims against Taylor, Sergeant Hodges, and John Does 1–5.

unreasonable conclusions[,] or arguments." *Nemet Chevrolet*, 591 F.3d at 253 (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)) (alteration added). A motion pursuant to Rule 12(b)(6) therefore "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." *Brooks v. City of Winston–Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996). But dismissal "is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Id.* (citing *Richmond, F. & P. R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Accordingly, a court "may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

### III. <u>DISCUSSION</u>

#### A. *Statute of Limitations*

Section 1983 "'confer[s] a general remedy for injuries to personal rights.'" *Owens v. Okure*, 488 U.S. 235, 240 (1989) (quoting *Wilson v. Garcia*, 471 U.S. 261, 278 (1985)) (alteration added). Because a § 1983 claim "[is] best characterized as [a] personal injury action[]," federal courts must apply "a [s]tate's personal injury statute of limitations . . . to all § 1983 claims." *Id.* at 240–41 (quoting *Wilson*, 471 U.S. at 280) (alterations added). Specifically, a court must look to the law of "the state in which the alleged violations occurred." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Because Hair's claims arise from his confinement at NNRJ in Warsaw,

6

Virginia, the Court must apply the Commonwealth's time bar.[6] "In Virginia, the [personal injury] limitations period is two years."[7]

But although "state law supplies the limitation period" for § 1983 claims, "federal law supplies the rule of decision for when a particular [§ 1983] claim accrues." *Cosby v. Town of Farmville*, No. 3:20cv494, 2021 WL 3575841, at *5 (E.D. Va. Aug. 12, 2021) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)) (alteration added). Under federal law, "it is settled that 'a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" *Cosby*, 2021 WL 3575841 at *5 (first quoting *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995); and then citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)).

### *1. NNRJ Conditions of Confinement and April 8, 2022, Beating*

Hair brings three claims pursuant to 42 U.S.C. § 1983. All three arise from NNRJ officers' conduct during his detention, and all three are barred by Virginia's two-year statute of limitations.

The plaintiff states he "arrived at NNRJ in or around February 2021 and left at the end of April 2022," when he "was transferred to CDF[,] Chesapeake Detention Facility." (ECF No. 1 ¶¶ 19, 74 (alteration added).) This fact alone answers the statute of limitations inquiry—Hair's claims derive solely from his detention, which ended three years before he filed this suit—but a closer examination of each federal claim underscores the time bar.

---

[6] (*See* ECF No. 1 ¶ 1 ("At the time of the events giving rise to this action, . . . Hair was a pre-trial detainee at Northern Neck Regional Jail . . . located at 3908 Richmond Road, Warsaw, Virginia 22572.").)

[7] *Houghton v. Commonwealth of Va.*, 947 F.2d 941, 1991 WL 227800, *1 (4th Cir. 1991) (alteration added) (citing *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981)); *see also* Va. Code Ann. § 8.01-243(A) ("Unless otherwise provided . . . , every action for personal injuries, whatever the theory of recovery, . . . shall be brought within two years after the cause of action accrues.").

7

First, the April 8, 2022, beating provides the basis for Hair's first § 1983 claim, excessive force in violation of the Fourth and Fourteenth Amendments: "The . . . [d]efendants violated . . . Hair's Fourth and Fourteenth Amendment rights when they brutally attacked him in his N-POD cell without provocation or justification." (*Id.* ¶ 82.) This claim, therefore, accrued on April 8, 2022, or immediately thereafter—when Hair "possesse[d] sufficient facts about the harm done to him that [a] reasonable inquiry [would have] reveal[ed] his cause of action." *See Nasim*, 64 F.3d at 955 (alterations added). The plaintiff's second § 1983 claim, for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment, stems from both the April 8 attack and the defendants' failure to provide Hair "with the adequate and necessarily medical care" throughout his detention. (ECF No. 1 ¶¶ 89–100.) Construing in favor of Hair the fact that he left NNRJ "at the end of April 2022," this claim also accrued in April of 2022—at the very latest, by the end of the month when the Marshals transferred him to Chesapeake.[8] Finally, Hair's Fourth and Fourteenth Amendment bystanders' liability claim is premised entirely on the April 8, 2022, incident. (ECF No. 1 ¶¶ 127–32.) Accordingly, this claim too accrued in April of 2022.

---

[8] *See Edwards*, 178 F.3d at 243–44; *Nasim*, 64 F.3d at 955.

Because all three of Hair's claims brought pursuant to 42 U.S.C. § 1983 accrued in April of 2022, the statute of limitations ran in April of 2024.[9] Hair filed the instant complaint on April 8, 2025, a year too late. Accordingly, the Court will dismiss these claims with prejudice.[10]

---

[9] *See Houghton*, 1991 WL 227800 at *1; *Cramer*, 648 F.2d at 945. Hair urges the Court to instead adopt the four-year limitations period established by 28 U.S.C. § 1658. (*See* ECF No. 33, at 1.) Section 1658 provides a four-year catch-all statute of limitations for federal claims "arising under" any act of Congress enacted after December 1, 1990, unless the relevant act provides its own statute of limitations. 28 U.S.C. § 1658(a); *Chambers v. N.C. Dep't of Justice*, 66 F.4th 139, 141–42 (4th Cir. 2023). Here, Hair says that "[t]he acts giving rise to . . . [his] federal . . . claims were in retaliation for . . . [his] report of sexual assault under the Prison Rape Elimination Act . . . , enacted in 2003"—and this "inherent nexus" means that the four-year period "should control." (ECF No. 33, at 1–2); *see* Prison Rape Elimination Act, 34 U.S.C. §§ 30301–30309.

This line of argument misunderstands controlling precedent on § 1658. A cause of action "'aris[es] under' an act of Congress enacted after December 1, 1990, if the plaintiff's claim was 'made possible' by a post-1990 enactment." *Chambers*, 66 F.4th at 142 (citing and quoting *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)). Because "§ 1983 is merely the procedural vehicle for asserting an underlying claim," what "matters for the purposes of determining the applicability of § 1658(a) is the *substance* of the plaintiff's claim." *Id.* at 142 (emphasis in original) (cleaned up). Thus, "[the] question turns on whether the claim concerns [an injury] that was not actionable under [a] . . . pre-1990 statute." *Id.* at 143 (alterations added).

The substance of Hair's complaint forecloses the application of § 1658. The federal courts have recognized § 1983 actions for violations of Fourth and Fourteenth Amendment rights since before 1990. These causes of action arise from the federal Constitution's protections, not from 2003's PREA. *See, e.g., Graham v. Connor*, 490 U.S. 386, 392 n.6, 393, 395 n.10 (1989) (recognizing that excessive force claims brought under § 1983 "are [not] governed by a single generic standard" and analyzing the different standards applicable to excessive force actions brought under the Fourth, Eighth, and Fourteenth amendments). And though Hair only refers to the PREA in passing, the Court notes he could not bring a claim pursuant to the PREA even if he amended his complaint: "Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." *Chapman v. Willis*, No. 7:12cv389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013). And "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).

Virginia's two-year personal injury limitations period therefore controls because Hair's § 1983 claims do not arise from an act of Congress enacted after December 1, 1990. *See Chambers*, 66 F.4th at 142.

[10] *See Stone v. HVM, LLC*, No. 3:12cv403, 2012 WL 13034228, at *2 (E.D. Va. June 29, 2012) (citing *Lambert v. Javed*, 273 Va. 307, 311, 641 S.E.2d 109, 111 (2007) ("[W]hen a

## B. Equitable Tolling

Equitable tolling "applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (citing *Lawson v. Burlington Industries*, 683 F.2d 862, 864 (4th Cir. 1982)) (other citations omitted). This doctrine "is based on the wrongdoing of the defendant." *Id.* at 1050. Accordingly, to invoke the principle, Hair "must . . . show that the defendant attempted to mislead him and that [he] reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.* at 1049 (alterations added).

Hair contends his case presents a "rare instance" where the "narrow limitations period . . . should be tolled under federal equitable principles." (ECF No. 33, at 2, 10.) After all, Hair "was maliciously beaten by correctional officers," "suffered significant brain damage," "attempted to invoke administrative remedies," "believe[ed] that a PREA investigation was underway," and still "diligently pursued his claims and commenced this action." (*Id.* at 9–10 (alteration added).) But while tragic, these facts and circumstances do not warrant the application of equitable tolling. The plaintiff pleads no facts from which the Court could conclude that any defendant "wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action."[11] To the contrary, Hair admits he pursued this suit despite his injuries, which suggests he knew a cause of action existed during his convalescence. The defendants' evasiveness after the suit's filing makes

---

plaintiff's claim[s] against [certain] defendant[s] ha[ve] been resolved adversely to the plaintiff, whether on the merits or because of another bar to recovery such as . . . the statute of limitations, the plaintiff is not allowed to subject [those] defendant[s] to repetitive litigation on the same, previously resolved claim[s].") (alterations added)). Because the Court dismisses with prejudice Hair's § 1983 claims, the plaintiff may not file a future action asserting these same causes of action against the instant defendants.

[11] *See English*, 828 F.2d at 1049; (ECF No. 33, at 10.)

10

no difference to this analysis. The Court can infer nothing about the defendants' pre-suit actions from the facts Hair presents about their post-suit behavior.

### C. Supplemental Jurisdiction

28 U.S.C. § 1367(c)(3) authorizes a district court to decline to exercise supplemental jurisdiction over a claim when the court has dismissed all other claims over which the court has original jurisdiction. The remaining claims in Hair's complaint—violation of the Virginia Bill of Rights, common-law assault, common-law battery, common-law negligence, and bystanders' liability under the Virginia Code—arise from state law. Accordingly, the Court declines to exercise jurisdiction over the remaining state law claims and will dismiss them.[12]

### IV. CONCLUSION

For the reasons above, the Court finds that Virginia's two-year statute of limitations bars Hair's three claims brought pursuant to 42 U.S.C. § 1983. The Court will grant Luna and Hull's motion and will dismiss the three federal claims with prejudice. (ECF No. 29.) The Court declines to exercise supplemental jurisdiction over Hair's remaining state law claims and will dismiss those counts without prejudice.

---

[12] *See* 28 U.S.C. § 1367(c)(3). The Court acknowledges that the limitations periods on the plaintiff's state-law claims may also have run. (*See* ECF No. 30, at 5–6); Va. Code Ann. §§ 8.01-243(A) (providing a two-year statute of limitations for personal injury actions, "whatever the theory of recovery"), 8.01-243.2 (establishing a one-year statute of limitations for actions "relating to the conditions of [a plaintiff's] confinement," or a six-month limitations period "after all administrative remedies are exhausted," whichever occurs later) (alterations added), 8.01-248 (prescribing a two-year statute of limitations for "personal actions for which no other limitation is specified").

But because the parties' briefing focused on the limitations periods applicable to the plaintiff's constitutional claims and did not address the limitations periods applicable to Hair's state claims, the Court declines to decide those claims on a statute of limitations basis. *See, e.g., Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("In our adversarial system of adjudication, we follow the principle of party presentation. . . . *The parties frame the issues* for decision, while the court serves as neutral arbiter *of matters the parties present*") (citations omitted, emphasis added, cleaned up).

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 7 April 2026
Richmond, VA

/s/

John A. Gibney, Jr.
Senior United States District Judge